UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-X

MASAHIDE KANAYAMA,                                    Case No.:


      Petitioner,

      v.

SCOTT KOWAL, Chief of U.S.
Pre-Trial Services SDNY,

Respondent.

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-X

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

LAW OFFICES OF ROBERT TSIGLER
299 Broadway Ste 1400
New York, New York 10007
Ph: (718) 878-3781
*Attorney for Petitioner Masahide Kanayama*

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241

## INTRODUCTION

I, Michael Zigismund, Esq., am associated with the Law Offices of Robert Tsigler and am licensed in the Southern District of New York. I submit the following on behalf of Petitioner Dr. Masahide Kanayama ("Dr. Kanayama" or "Petitioner") on the basis of knowledge, information, or belief, and a review of the file available to my office and conversations with the parties.

1. Petitioner Dr. Masahide Kanayama is a medical doctor and surgeon who resides in New York City as a legal permanent resident of the United States. He is a Japanese citizen who has applied for U.S. citizenship and affirmatively applied for asylum and relief from removal under the Convention Against Torture (CAT). Exhibit A, annexed hereto (I-589 Receipt).

2. Dr. Kanayama is a world-renowned endometriosis expert and one of the few surgeons in the world equipped to treat deep endometriosis and adenomyosis, conditions which cause severe pain and infertility in millions of women. Dr. Kanayama invented "haptic excision," a treatment method which has given countless women the ability to start families and regain their lives without constant pain. Dr. Kanayama works on the frontlines of the fight against endometriosis and the advancement of women's health and research.

3. The Petitioner has no criminal history.

4. The Japanese government sought extradition of the Petitioner to investigate the alleged vandalism of two shrines in Japan. Exhibit B, annexed hereto, at 11 (Government Reply Motion).

1

5.  On October 16, 2025, the State Department authorized Dr. Kanayama's extradition to Japan. Exhibit C, annexed hereto (U.S. Department of State Determination).

6.  Dr. Kanayama's extradition to Japan raises the specter of persecution based on religion, political opinion, and given his Korean ethnicity. On December 29, 2025, Dr. Kanayama submitted an application for asylum and relief under the CAT before the United States Citizenship and Immigration Services (USCIS). Ex. A.

7.  On January 20, 2026, the Supreme Court of the United States denied Petitioner's application for a stay of extradition.

8.  The only judicial review available is this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

## PROCEDURAL HISTORY

9.  On April 28, 2015 and December 8, 2015, the Japanese police obtained arrest warrants for Dr. Kanayama as part of its investigation into two alleged incidents of vandalism dating from March 25, 2015. Ex. B at 1. The arrest warrants have since been renewed. *Id.* at 11. The alleged vandalism targeted a Shinto shrine near Katori and a Buddhist temple in Narita. *Id.* at 1.

10. On December 12, 2016, the Japanese government sent the State Department a Diplomatic Note requesting the extradition of Dr. Kanayama. The State Department later referred the matter to the Department of Justice (DOJ).

11. On May 30, 2017, the DOJ filed an extradition complaint against Dr. Kanayama in the Southern District of New York, case number 17-Misc-1. *Id.* at 13.

12. On June 2, 2017, the United States Marshals Service arrested the Petitioner in New York City. *Id.*

13. Several days later, a federal magistrate judge ordered the Petitioner's release from custody on certain conditions, pending the resolution of the extradition complaint. *Id.*

14. On August 22, 2017, the government filed its memorandum in support of Japan's extradition request. Exhibit D, annexed hereto, at ¶ 14 (Petitioner's 2023 Habeas Petition).

15. On October 20, 2017, Dr. Kanayama filed formal opposition to that request. *Id.* at ¶ 15.

16. On November 17, 2017, the government filed its reply to that opposition. *Id.*

17. On January 12, 2018, the Petitioner filed a sur-reply to the government's response. Ex. B at 13.

18. On December 6, 2022, the district court, with Judge Edgar Ramos presiding, held a formal extradition hearing. Exhibit E, annexed hereto, at 6 (District Court Order).

19. On January 26, 2023, the district court issued a written order certifying the Petitioner for extradition. Ex. E.

20. On January 20, 2026 and after years of intervening litigation, the Supreme Court of the United States denied Petitioner's application to stay extradition.

21. Dr. Kanayama now files this Petition, naming Scott Kowal, Chief of Pre-Trial Services for the Southern District of New York as the respondent. The naming of this respondent is based upon research conducted by the Petitioner, but the available authority on the issue of who should be the proper respondent in this matter is limited. Therefore, the Petitioner has reserved the right to name other appropriate respondents.

## STATUS OF PETITIONER

22. The Petitioner remains subject to conditions of supervised release, modified since his release on bond. He is not permitted to travel internationally, and his passport is in the

possession of the United States Pre-Trial Office for the Southern District of New York.
Ex. E at ¶ 21.

23. Petitioner must submit any domestic travel plans to the supervising officer before his trips take place. *Id.*

24. Petitioner must report to that officer once a week online.

25. Petitioner has posted a secured bond, which includes $1,000,000 cash and two properties he owns in Manhattan, with the district court. *Id.*

## BRIEF SUMMARY OF FACTUAL HISTORY

26. On March 25, 2015, a man allegedly touched wooden pillars at the Narita-san Shinjoji Temple, a Buddhist temple in Narita, with a small amount of vegetable oil. Later that same day, a man allegedly touched pillars, stairs, and an offering box at the Katori Jingu Shrine, a Shinto shrine and tourist attraction, again using vegetable oil. Ex. B at 1.

27. The Narita police instructed Temple and Shrine staff to repair the affected structures, with repairs estimated at slightly above 20,000 USD. *Id.* at 17.

28. Nevertheless, the Japanese police proceeded with arrest warrants for alleged violations of Article 260 of the Japanese penal code, which penalizes "damage or destruction of structure (vandalism)." Ex. D at 9.

29. Petitioner founded International Marketplace Ministry (IMM), which focuses on personal relationships with God through prayer in daily life and in work life.

30. On December 29, 2025, Dr. Kanayama applied for asylum and relief under the CAT before USCIS. Ex. A. Dr. Kanayama's asylum application is based on the Japanese government's ongoing attempt to imprison him because of his political opinions and religious and ethnic background.

31. On February 17, 2026, Petitioner attended his asylum interview at the USCIS Newark Asylum Office – Manhattan Branch. Exhibit F, annexed hereto (I-589 interview notice and USCIS Decision Regarding Your Application for Asylum).

## APPLICABLE LAW

32. There is no dispute as to the validity of the extradition treaty between the United States and Japan.

33. However, the State Department failed to meet its statutory obligations under the Foreign Affairs Reform and Restructuring Act (FARRA). Section 2242 of FARRA states the non-refoulement "policy of the United States not to expel, extradite or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." This language fulfills the United States's treaty obligations under the CAT and is codified as a policy note to 8 U.S.C. § 1231 and implemented in the regulations by way of 22 C.F.R. §§ 95.1-95.4.[1]

34. Because the State Department failed to determine that Dr. Kanayama is not more likely than not to face torture upon extradition to Japan, habeas jurisdiction vests to ensure compliance with the FARRA and the CAT. *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 970–72 (9th Cir. 2012).

35. Second, the ongoing restriction on Dr. Kanayama's liberty violates his substantive statutory right to the adjudication of his December 29, 2025 application for asylum and

---

[1] The government may not remove or return an individual to a country where their "life or freedom would be threatened." 8 U.S.C. § 1231(b)(3). As Dr. Kanayama consistently demonstrated, the Japanese investigation targeting him for prosecution is decidedly political. Therefore, the exception to non-refoulement where there are "serious reasons to believe that the alien committed a serious *nonpolitical* crime outside the United States before the alien arrived in the United States" does not apply. 8 U.S.C. § 1231(b)(3)(B)(iii) (emphasis added).

relief under the CAT. The asylum law affords "[a]ny alien who is physically present in

the United States or who arrives in the United States... irrespective of such alien's status,

may apply for asylum." 8 U.S.C. § 1158(a). Because pending extradition is not a bar to

the application for asylum relief, the competent federal authorities may not unlawfully

extradite Dr. Kanayama. *Zadvydas v. Davis*, 533 U.S. 678, 688–99 (2001); *INS v. St. Cyr*,

533 U.S. 289, 301–05 (2001); *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Boumediene v.*

*Bush*, 553 U.S. 723, 779 (2008); *Kiyemba v. Obama*, 561 F.3d 509, 512–13 (2nd Cir.

2009).

36. The district court certified the government's extradition request pursuant to 18 U.S.C. §

3184 and committed Dr. Kanayama to custody of the United States Marshals "to await

further determination by the Secretary regarding his surrender to the requesting

state…This Order constitutes the written findings of fact and conclusions of law as to the

extraditability of Kanayama." Ex. E at 8.

## I.  The Secretary of State's CAT/FARRA Determination Was Procedurally Defective and Therefore Cannot Lawfully Support Custody Pending Imminent Extradition

37. The Secretary of State's CAT determination was procedurally defective and does not

satisfy FARRA or its implementing regulations. Federal law prohibits extradition unless

and until the Secretary of State determines, pursuant to 22 C.F.R. § 95.2, that extradition

is not barred. The implementing regulations require that "the competent authorities shall

take into account *all relevant considerations* including, where applicable, the existence in

the State concerned of a consistent pattern of gross, flagrant or mass violations of human

rights." 22 C.F.R. § 95.2(a)(2) (emphasis added). In addition, "the Department considers

the question of whether a person facing extradition from the U.S. is more likely than not

6

to be tortured in the State requesting extradition when appropriate in making this determination." 22 C.F.R. § 95.2(b) (internal quotations omitted).

38. Here, the State Department authorized extradition to Japan on October 16, 2025, invoking 18 U.S.C. § 3186 and the Extradition Treaty between the U.S. and Japan. The State Department's determination is conclusory in nature: "In reaching a decision in *any* extradition case, the Department carefully and thoroughly considers all claims submitted and takes appropriate steps, which may include obtaining information or commitments from the requesting government, to address the identified concerns." Ex. C (emphasis added). The possibility, or lack thereof, of torture does not appear in the text of the determination. It is not clear whether the State Department considers an individualized determination necessary at all, given the generalized language describing their posture in *any* decision. The State Department attested to the Japanese government's commitment to meet Dr. Kanayama's medical needs "both in transit from the United States to Japan, and during any period of detention in Japan." *Id.* But oblique references to "medical needs" do not satisfy the State Department's obligation to "consider[] the question of whether a person facing extradition "is more likely than not" to be tortured in the State requesting extradition when appropriate in making this determination." 22 C.F.R. § 95.2(b). Beyond the generic assurance of the Japanese government, the State Department apparently failed to consider the pattern of abusive treatment of detainees in the Japanese prison system. In addition, the State Department neglected to consider the Japanese government's evident animus against Petitioner. Finally, the State Department could not have considered, in its earlier-drafted determination, Dr. Kanayama's application for asylum and withholding of

7

removal, which includes reams of additional evidence documenting Japan's violations of the CAT.

39. Courts have recognized that habeas jurisdiction exists to prevent extradition that would moot or defeat mandatory CAT procedures, even though courts may not decide CAT merits. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 970–72 (9th Cir. 2012). Specifically, the Ninth Circuit held as insufficient "a generic declaration outlining the basics of how extradition operates at the Department and acknowledging the Department's obligations under the aforementioned treaty, statute and regulations, but the Department gives no indication that it actually complied with those obligations in this case." *Id.* at 957.

40. There is a circuit split on this issue, with the Second Circuit recently finding that 8 U.S.C. § 1252(a)(4) "bars courts from exercising habeas jurisdiction over CAT claims raised by individuals facing extradition." *Kapoor v. DeMarco*, 132 F.4th 595, 614 (2nd Cir. 2025).

41. However, the decision in *Kapoor* is distinguishable on its own terms. In *Kapoor*, the petitioner argued "she would likely be tortured if returned to India and that *the Secretary erred by finding the contrary.*" *Id.* at 604 (emphasis added). In the instant case, Petitioner argues not that *the Secretary erred in its findings*, but rather that *the Secretary erred in not even making* any of the requisite findings. The State Department's determination makes no reference to the possibility of torture whatsoever. Instead, the State Department issued a two-paragraph determination reaching only the question of Dr. Kanayama's medical care. This determination does not satisfy the procedural requirements of the FARRA.

42. The Petitioner may not be extradited if the State Department concludes that he is more likely than not to be tortured upon transfer, an inquiry which remains not yet adjudicated. As the Second Circuit acknowledges, the Supreme Court has "reserved judgment on a hypothetical case in which the Executive has determined that a detainee [in custody] is likely to be tortured but decides to transfer him anyway." *Id.* at 611, n. 16 (internal quotations omitted). The Second Circuit did not reach this issue in *Kapoor* because of its finding that the "Department of State has acknowledged that the Convention obligated the United States not to extradite a person to a country where there are substantial grounds for believing that he would be in danger of being subjected to torture" and that the Department did "confirm[] on three separate occasions that the decision to surrender Kapoor 'complies with the United States' obligations under the Convention.'" *Id.* As aforementioned, it is unknown whether the State Department considers torture more likely than not upon extradition of the Petitioner.

43. The State Department's failure to make the necessary determination is an independent violation of the FARRA and not a "cause or claim under the United Nations Convention Against Torture." 8 U.S.C. § 1252(a)(4). The Second Circuit explicitly refrained from ruling on "[w]hether an extraditee could nonetheless bring a CAT claim under FARRA pursuant to its policy statement or directive to the Secretary." *Kapoor* at 610, n. 14. A claim under FARRA, however, is not a "CAT claim," but rather a FARRA claim emanating from a statutorily created substantive right. Because of this FARRA-created right, a habeas petition no longer presents any "serious concern" that "in the present context…is to be addressed by the political branches." *Munaf v. Green*, 553 U.S. 674, 700 (2008). Rather, the present habeas petition is the only viable means to vindicate

Petitioner's rights under the FARRA and its implementation in the Code of Federal Regulations. Otherwise, Petitioner will continue to be restrained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

44. Because the Secretary's determination did not comply with procedures required by federal statute, extradition would violate federal law. It is unlawful for Petitioner's custody, in anticipation of imminent extradition, to continue under these ambiguous auspices.

**II.    Extradition Is Unlawful Because the Pending Asylum and CAT Application Triggers Statutory Obligations That Have Not Been Satisfied**

45. Alternatively, extradition may not be executed while Petitioner's asylum application remains pending. U.S. asylum law establishes Petitioner's right to the adjudication of his application. That right may not be extinguished by extradition before the adjudication is complete. Thus, Petitioner's ongoing custody is unlawful because "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

46. The United States Congress codified a substantive right to seek asylum by way of the Immigration and Nationality Act (INA). The asylum law provides that "[a]ny alien who is physically present in the United States or who arrives in the United States… irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a). The INA and implementing regulations presume an applicant's right to be heard either in an interview or administrative hearing. *Matter of Fefe*, 20 I. & N. Dec. 116 (BIA 1989); 8 U.S.C. § 1229a(b)(4)(B) (opportunity to present testimony and evidence on behalf of the applicant); 8 C.F.R. § 1208.3 (presuming testimony); 8 C.F.R. § 1208.13(a) (presuming

testimony will be given); 8 C.F.R. § 1240.11(c)(3) (application to be adjudicated by an immigration judge "after an evidentiary hearing to resolve factual issues in dispute" and the noncitizen "*shall* be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf" (emphasis added)).

47. Extradition of Dr. Kanayama while his asylum application remains pending would vitiate his right to adjudication of the asylum petition. Any contrary approach would render the statutory protections meaningless by permitting indirect refoulement through extradition.

48. Allowing extradition to proceed while an asylum application is pending would deprive Petitioner of a full and fair adjudication of his statutory rights and would irreparably undermine the asylum process.

## EXHAUSTION OF OTHER REMEDIES

49. Federal law provides for no direct appeal of a district court's certification of a governmental request for international extradition.

50. Therefore, the only avenue for judicial review of such certification is the filing of a petition for writ of habeas corpus.

51. This petition does not challenge the validity of a conviction or sentence.

52. This petition does not directly involve any immigration proceedings.

53. The undersigned counsel is unaware of any petition, appeal, motion, or other action filed under any jurisdiction to address the district court order.

## CONCLUSION

WHEREFORE, this Court should grant this petition and set aside the original court's certification of the government's request for extradition in this matter. Undersigned counsel

concurrently filed an emergency motion to stay extradition, pending resolution of this habeas

petition.

Respectfully submitted,

Michael Zigismund, Esq.