UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASAHIDE KANAYAMA,
                              Petitioner,

                -v-

SCOTT KOWAL,
                              Respondent.

26-CV-1402 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Before the Court is Petitioner Masahide Kanayama's emergency motion to stay his extradition pending adjudication of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons that follow, Kanayama's emergency motion to stay is denied.

## I.    Factual and Procedural Background

On March 25, 2015, Petitioner Masahide Kanayama allegedly touched parts of a Shinto shrine near Katori, Japan and a Buddhist temple in Narita, Japan with vegetable oil.  (ECF No. 1 ("Pet.") ¶ 26.)  Following this incident, the Japanese police issued arrest warrants for Kanayama for vandalism in violation of Article 260 of the Japanese penal code.  (*Id.* ¶¶ 9, 28.)  On December 12, 2016, the Japanese government contacted the U.S. State Department to request Kanayama's extradition, and the State Department referred the matter to the Department of Justice ("DOJ").  (*Id.* ¶ 10.)  After the DOJ filed an extradition complaint, Kanayama was arrested on June 2, 2017, and later released from custody on certain conditions pending the resolution of the extradition complaint.  (*Id.* ¶¶ 11-13.)

On December 6, 2022, after receiving briefing from the parties on Japan's extradition request, Judge Edgardo Ramos presided over a formal extradition hearing; he then issued a written order certifying Kanayama for extradition on January 26, 2023.  (*Id.* ¶¶ 18-19.)  On April

25, 2023, Kanayama filed a petition for a writ of habeas corpus contesting Judge Ramos's

extradition certification, which was denied by Judge Colleen McMahon on April 11, 2024. *See

Kanayama v. Kowal*, No. 23-CV-3469, 2024 WL 1587489, at *1 (S.D.N.Y. Apr. 11, 2024).

Kanayama appealed, and the Second Circuit denied Kanayama's application for a stay and

affirmed Judge McMahon's decision. *See Kanayama v. Kowal*, No. 24-1340, 2025 WL

3210986, at *2 (2d Cir. Nov. 18, 2025).  In the following weeks, the Supreme Court denied

Kanayama's multiple applications for a stay. *See Kanayama v. Kowal*, No. 25A633, 2025 WL

3619532, at *1 (U.S. Dec. 12, 2025); *Kanayama v. Kowal*, No. 25A633, 2026 WL 135702, at *1

(U.S. Jan. 20, 2026).  On February 23, 2026, the Supreme Court also denied Kanayama's petition

for a writ of certiorari. *Kanayama v. Kowal*, No. 25-715, 2026 WL 490775 (U.S. Feb. 23, 2026).

On October 16, 2025, the State Department authorized Kanayama's extradition to Japan.

(Pet. ¶ 38.)  In its letter, the State Department stated:  "In reaching a decision in any extradition

case, the Department carefully and thoroughly considers all claims submitted and takes

appropriate steps, which may include obtaining information or commitments from the requesting

government, to address the identified concerns."  (ECF No. 1-1 at 41.)  Kanayama is currently

required to surrender on March 2, 2026, for extradition to Japan.

On December 29, 2025, Kanayama applied for asylum and relief under the Convention

Against Torture ("CAT"), alleging that the Japanese government has attempted to imprison him

due to his political opinions and religious and ethnic background.  (Pet. ¶ 30.)

Kanayama filed a second petition for a writ of habeas corpus (Pet.), as well as an

emergency motion to stay his extradition (ECF No. 2 ("Stay Mot.")), with this Court on February

19, 2026.  The Government filed its response to Kanayama's emergency motion to stay on

February 24, 2026 (ECF No. 10 ("Opp.")), and the Court held an in-person conference with the parties on February 25, 2026.

## II.    Legal Standard

When evaluating a motion to stay extradition, the Court considers four factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation marks omitted).  Of these factors, "[t]he first two . . . are the most critical."  *Id.*  When the Government is an opposing party, the third and fourth factors merge.  *Id.* at 435.

## III.    Discussion

### A.    Likelihood of Success on the Merits

#### 1.    Habeas Jurisdiction

"The statutes governing extradition create a multi-step procedure that divides responsibility for extradition between the Secretary of State and the courts."  *Kapoor v. DeMarco*, 132 F.4th 595, 599 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 325 (2025).  After a district court issues an order certifying extradition, as Judge Ramos did on January 26, 2023, "the Secretary of State must then decide whether to order the person extradited."  *Id.* at 601.  By regulation, "[i]n each case where allegations relating to torture are made or the issue is otherwise brought to the [State] Department's attention, appropriate policy and legal offices review and analyze information relevant to the case in preparing a recommendation to the Secretary as to whether or not to sign the surrender warrant."  22 C.F.R. § 95.3(a).  Moreover, when determining whether an individual should be extradited, the Secretary of State (the "Secretary") "considers the question of whether a person facing extradition from the U.S. is more likely than not to be

3

tortured in the State requesting extradition."  *Id.* § 95.2(b).  These regulatory requirements, first codified at Section 2242 of the Foreign Affairs Reform and Restructuring Act ("FARRA"), implement the United States' treaty obligations under CAT, which provides, in turn, that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  CAT, art. III, Dec. 10, 1984, 1465 U.N.T.S. 85 (1984).

Kanayama asserts that the State Department failed to meet its statutory obligations under Section 2242 of FARRA by neglecting to determine on the record whether Kanayama "is more likely than not to be tortured" upon extradition to Japan.  (Pet. ¶ 33; Stay Mot. at 3-4.)  The generalized language of the State Department's letter authorizing extradition, Kanayama argues, makes no mention of the possibility of torture at all; nor does it consider "the pattern of abusive treatment of detainees in the Japanese prison system" or "the Japanese government's evidence of animus against Petitioner."  (Pet. ¶ 38.)  As a factual matter, however, the Government offered evidence—and Kanayama conceded at the conference before the Court—that Kanayama never argued in his submission to the State Department that he would be subject to torture under CAT if he were extradited to Japan.  (*See* ECF No. 10-3.)  The Court is also not persuaded by Kanayama's contention that the State Department is required to consider the risk of torture in every extradition case, regardless of whether the issue is raised.  To the contrary, the regulations suggest that State Department officials must evaluate materials about an extraditee's risk of torture only in cases "where allegations relating to torture are made or the issue is otherwise brought to the Department's attention."  22 C.F.R. § 95.3(a).  It is thus difficult to see how Kanayama can fault the State Department for failing to consider arguments that he did not explicitly surface in the first place.

The Court is also not persuaded, as a legal matter, that it has jurisdiction to adjudicate Kanayama's habeas claims.  As Kanayama acknowledges, the Second Circuit recently held that 8 U.S.C. § 1252(a)(4), enacted through the REAL ID Act of 2005, "bars courts from exercising habeas jurisdiction over CAT claims raised by individuals facing extradition."  *Kapoor*, 132 F.4th at 614.  That statutory provision reads:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

8 U.S.C. § 1252(a)(4).  Because Kanayama is pursuing a CAT claim by means of a habeas petition, *Kapoor* appears to squarely foreclose the Court's jurisdiction to hear this case.

Kanayama argues that his case is distinguishable because, unlike in *Kapoor*, where the petitioner took issue with the *substance* of the State Department's finding that she was unlikely to be tortured, here the State Department made no determination as to risk of torture at all.  (Pet. ¶ 41.)  As noted above, it is unlikely that any failure by the State Department to consider or address Kanayama's claims of torture under CAT could amount to a procedural error where Kanayama never presented those claims to the State Department in the first place.  But in any event, the language of 8 U.S.C. § 1252(a)(4) is also not so circumscribed.  It strips district courts of habeas jurisdiction over "*any* cause or claim" under CAT, rather than particular decisions or determinations.  8 U.S.C. § 1252(a)(4) (emphasis added).  A plain reading of this language suggests that it encompasses "cause[s] or claim[s]" arguing the very thing that Kayanama presses here—namely, that the State Department erred by making no finding about whether Kanayama is likely to face torture upon his extradition.

5

Kanayama urges the Court to follow the Ninth Circuit's decision in *Trinidad y Garcia v. Thomas*, which held that district courts have habeas jurisdiction to review claims of the kind that Kanayama presses here. 683 F.3d 952, 956-57 (9th Cir. 2012). (Pet. ¶ 39; Stay Mot. at 3.) But the Second Circuit firmly rejected *Trinidad y Garcia* in *Kapoor*. *See* 132 F.4th at 609-10 ("[W]e are unpersuaded by the Ninth Circuit's interpretation of the REAL ID Act. We read the plain language of Section 1242(a)(4) to unequivocally bar any habeas review of CAT claims in extradition proceedings, and thus we (like the D.C. and Fourth Circuits) part ways with our sister Circuit."). Given this Court's duty to follow the dictates of the Second Circuit, it appears clear that jurisdiction is lacking.

Finally, Kanayama claims that "[t]he State Department's failure to make the necessary determination is an independent violation of FARRA" and therefore does not qualify as a "cause or claim under the United Nations Convention Against Torture" under 8 U.S.C. § 1252(a)(4). (Pet. ¶ 43.) The Second Circuit, however, expressly declined to address whether, absent Congress's bar of federal habeas review of extradition-based CAT claims, "an extraditee could nonetheless bring a CAT claim under FARRA." *Kapoor*, 132 F.4th at 610 n.14. The court's reasoning thus necessarily construed Section 1252(a)(4)'s jurisdictional bar as encompassing FARRA claims. Nor is it clear as a matter of law whether any daylight exists between FARRA and CAT for the purposes of Section 1252(a)(4), as FARRA simply codifies the United States' existing treaty obligations under CAT. *See id.* at 601-02. Rejecting a similar argument, the D.C. Circuit held in *Omar v. McHugh* that "a claim under [FARRA] is a claim under the Convention Against Torture and is barred by the REAL ID Act." 646 F.3d 13, 18 n.2 (D.C. Cir. 2013) (Kavanaugh, J.). Absent any case law or other authority suggesting that FARRA confers a substantive right on extraditees separate and apart from CAT for the purpose of federal habeas

jurisdiction, the Court cannot conclude that Kanayama has demonstrated a likelihood of success on this issue. *See Nken*, 556 U.S. at 434 (demonstrating a likelihood of success on the merits requires "more than a mere possibility of relief" (cleaned up)).

Because habeas jurisdiction over Kanayama's CAT claim is barred by 8 U.S.C. § 1252(a)(4) under *Kapoor*, Kanayama is unlikely to succeed on that claim.

### 2.    Kanayama's Pending Asylum Application

In the alternative, Kanayama argues that he cannot be extradited while his asylum application remains pending because his extradition "would vitiate his right to adjudication of the asylum petition" under 8 U.S.C. § 1158(a). (Pet. ¶ 47; Stay Mot. at 4.) But Kanayama cites no case law indicating that a petitioner has an absolute right to remain in the United States while his asylum application is adjudicated. And while Section 1158(a) states that individuals physically present in the country "may *apply* for asylum," 8 U.S.C. § 1158(a)(1) (emphasis added), neither that language nor the regulations outlining asylum procedures suggest that, in situations where a petitioner is to be extradited, he may delay those proceedings simply by filing an application for asylum.

Additionally, as the Government points out, other circuits have held that immigration proceedings have no collateral or preclusive effect on extradition proceedings. *See, e.g.*, *Castaneda-Castillo v. Holder*, 638 F.3d 354, 360 (1st Cir. 2011) ("[A]sylum and extradition proceedings are separate and distinct, in the sense that the resolution of even a common issue in one proceeding is not binding in the other." (quotation marks omitted)); *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1053 (1st Cir. 2021) (holding that the BIA's finding that the petitioner was likely to face torture in his home country did not collaterally estop the Secretary of State from making a contrary determination for the purposes of extradition proceedings); *see also Kapoor*, 132 F.4th

at 599 n.2 ("The extradition process should not be confused with the immigration removal process.").

In light of this case law, as well as Kanayama's failure to marshal authorities in support of his position, Kanayama has not demonstrated a likelihood of success on the merits of this claim.

### B.    Irreparable Injury

Kanayama contends that he will suffer irreparable harm absent a stay because "extradition will expose [him] to years of incarceration in Japan and lead to the lapse of his Legal Permanent Resident status." (Stay Mot. at 5.)  There is little doubt that denial of a stay would impose a serious burden on Kanayama, given the imminence of his extradition and the likely difficulty of undoing such a removal.  *Cf. Nken*, 556 U.S. at 435 (stating that removal in the immigration context is "not categorically irreparable" since petitioners who are removed and later "prevail can be afforded effective relief by facilitation of their return").  Kanayama's extradition, however, does not preordain a guilty verdict:  It merely allows Japan to begin the process of adjudicating Kanayama's guilt or innocence.  Moreover, other courts have denied a stay, even assuming the existence of irreparable harm arising from extradition, where the petitioner has not demonstrated a likelihood of success on the merits of his claims.  *See, e.g.*, *Moshir v. Salina*, No. 17-CV-55, 2018 WL 1940259, at \*2 (W.D.N.Y. Apr. 25, 2018) ("Even assuming that extradition pending appeal of the Court's denial of habeas corpus relief would constitute irreparable harm, a stay of extradition pending appeal is unwarranted because Petitioner has not demonstrated a likelihood of success on the merits of his appeal."); *Quintanilla v. United States*, 582 Fed. Appx. 412, 414 (5th Cir. 2014) ("Although we assume that extradition while an appeal of the denial of habeas corpus is pending would constitute irreparable harm, a stay is not warranted because [the petitioner] has not demonstrated a likelihood of success on the

8

merits of her appeal."); *Demjanjuk v. Meese*, 784 F.2d 1114, 1118 (D.C. Cir. 1986) ("While the imminent extradition of petitioner to Israel may qualify as a threat of irreparable harm, petitioner, as shown above, fails to demonstrate a likelihood of success on the merits.").

The same result obtains here. Although Kanayama has arguably shown irreparable harm absent a stay, he has not demonstrated a likelihood of success on the merits of any of his claims. This factor, without more, therefore does not warrant the imposition of a stay.

### C.     Remaining Factors

The two remaining factors—whether issuance of the stay will substantially injure the other parties interested in the proceeding and where the public interest lies—weigh in favor of denying the stay. This case has wended its way through all three levels of the federal court system, sometimes multiple times, for nearly a decade. It has received ample and thoughtful consideration from several judges. Staying Kanayama's extradition at this juncture, on the eve of his long-pending removal to Japan, would certainly prejudice the Government. This is especially so given the United States' "strong interest in having extradition requests submitted by our treaty partners . . . resolved without undue delay." (Opp. at 21.)

Accordingly, the Court concludes that the remaining *Nken* factors counsel against issuing a stay.

## IV.     Conclusion

For the foregoing reasons, Kanayama's emergency motion to stay his extradition to Japan is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 2.

SO ORDERED.

Dated: February 26, 2026
      New York, New York

                                                            J. PAUL OETKEN
                                        United States District Judge